COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Felton
Argued at Richmond, Virginia


DAYOMIC JACKIE SMITH
                                        OPINION BY
v.    Record No. 1279-02-2          JUDGE ROBERT P. FRANK
                                        MAY 20, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    William R. Shelton, Judge

            Todd M. Ritter (Daniels & Morgan, on brief),
            for appellant.

            Robert H. Anderson, III, Senior Assistant
            Attorney General (Jerry W. Kilgore, Attorney
            General, on brief), for appellee.


     Dayomic Jackie Smith (appellant) was convicted in a jury

trial of rape, in violation of Code § 18.2-61; object sexual

penetration, in violation of Code § 18.2-67.2; and two counts of

attempted rape, in violation of Code § 18.2-67.5.  On appeal, he

contends the trial court erred in denying his motions for curative

instructions to correct improper comments made by the assistant

Commonwealth's attorney during voir dire and closing argument.

For the reasons stated, we reverse the convictions.

                          BACKGROUND

     RS testified appellant raped her and inserted his finger in

her vagina on August 19, 1997.  At the time, RS was twelve years

old.  After the incident, RS returned to her home where her mother

and her friend, JR, were folding clothes.  She did not tell either

of them of the incident because she was "scared" and did not think

they would believe her.  She said everyone liked appellant "so nobody would believe me."  RS then left her home and walked across the street to Phyllis's home (JR's sister).  She did not mention the incident to Phyllis that night.  When RS did tell Phyllis, on an undisclosed date, Phyllis did not believe her.  RS testified, "if she didn't believe me, nobody else would . . . ."

JR, who was seventeen at the time of the incidents, testified appellant attempted to rape her on June 29, 1997 and September 7, 1997, but he was unsuccessful.  After each incident, JR told her sister, Phyllis, but did not tell an adult.  JR told her boyfriend about the second assault on the day after it occurred.  JR testified she had not told an adult earlier because "nobody would believe me."  Appellant was a "real close friend" of JR's brother, and her mother liked appellant.

In October, RS and JR were discussing teenage pregnancy and sexually transmitted diseases at JR's home.  RS told JR appellant had raped her.  JR responded by telling RS that appellant had unsuccessfully tried to rape her.  According to JR, they waited "until [appellant] had left because [they] were afraid to go outside," then they went to RS's mother and told her about the incidents.[1]  The mother then called the police.

During <u>voir</u> <u>dire</u>, the prosecutor said:

> How many here have raised teenagers?  Okay.
> It's commonly known that children don't
> report sexual assaults right away, if at
> all.

---

[1] RS corroborated this testimony.

Appellant objected to the comment but did not ask at that time for a mistrial or a curative instruction.[2] The trial court indicated, "I think I have to hear the question first, Mr. Bowles." The prosecutor then inquired of the jury if a delay in reporting the assault would affect a victim's credibility.

After this question, both parties approached for a bench conference, and the appellant again objected to the comment, arguing it was not "factually sound" and was "highly prejudicial." Again, appellant did not ask for a mistrial or curative instruction. The trial court indicated it was unable to rule on the objection because the jury had not yet been impaneled. Appellant then conducted his voir dire.

While counsel made their strikes of the veniremen, the trial court instructed the panel:

> The opening statements and the closing
> remarks of the attorneys are intended to
> help you in understanding the facts and
> applying the law. What they will say to you
> in their opening statements, what they will
> argue to you at the close of the evidence is
> not evidence. The evidence will come from
> that witness box of witnesses who are sworn
> to tell the truth.

After the jury had been impaneled, appellant asked the trial court to instruct the jury "to disregard the comment by [the Commonwealth] that it is a known fact that children don't tell things immediately, they wait several months before    . . . [.]" The trial court interrupted and indicated "I've already advised the jury that any statement you make or she makes is not

_____

[2] Appellant never requested a mistrial, but did request a curative instruction. The Commonwealth does not maintain the voir dire issue is defaulted.

– 3 –

evidence." Appellant attempted to explain his position, but the court said, "You've got your objection on the record. I don't feel it's necessary to do that."

During opening statements, each party maintained the credibility of the victims would be determinative of the case. Each party commented on the delayed reporting of the assaults. Appellant stated:

> Are you going to believe her witnesses?
> Judge Shelton asked you all to disregard any
> comments that Ms. Duval made as not being
> evidence. Those comments, including the
> fact that it's a widely held belief known to
> all that children wait months to tell
> somebody about an incident such as this, he
> has told you that that's not evidence and
> it's to be disregarded.

At the end of the trial, during her rebuttal argument, the prosecutor explained:

> I've tried for years to get into teenagers'
> heads to 10, 11, 12, 15, 16-year-olds' heads
> when this comes to these sexual assaults
> cases, trying to understand why, why, why
> don't they tell. Why don't they immediately
> tell their mother. Why? I don't know. And
> I think they did the best they could up here
> by telling you they were afraid. And I'm
> sure they were afraid, and I don't think
> they can analyze it much more than that.

Appellant began to object to this statement, but the trial court interrupted. In the presence of the jury, the court told appellant, "I think, Mr. Bowles, that I'll ask you one more time[3]

---

[3] Appellant's counsel objected earlier in the Commonwealth's closing argument to the statement, "And I've never been raped so I can't tell you what goes through your mind and whether you see tan carpet or white carpet. I cannot imagine being able to tell

- 4 -

I've instructed this jury that anything that she says is not evidence, and they shouldn't consider it as evidence; okay?  And I'll accept your continued objections to anything she says."[4]

## ANALYSIS

Appellant contends the trial court erred in not giving a curative instruction after the prosecutor in <u>voir</u> <u>dire</u> essentially testified that "it's commonly known that children

---

you any details.  I probably wouldn't have seen . . . [.]"
The trial court responded to the objection, "I've adequately told this jury that all of your remarks and all of her remarks are not evidence."

[4] While counsel did not explicitly ask for a curative instruction, the trial court interrupted him and clearly indicated he understood that the objection involved a request for an instruction.

don't report sexual assaults right away, if at all."[5]  The

Commonwealth responds that, after this comment, the trial court

gave the jury an appropriate cautionary instruction.[6]

We begin with the premise that the purpose of <u>voir</u> <u>dire</u> is

to "ascertain whether [a juror] is related to either party, or

has any interest in the cause, or has expressed or formed any

opinion, or is sensible of any bias or prejudice therein."  Code

§ 8.01–358.  It allows the selection of "a fair and impartial

jury."  <u>Beavers v. Commonwealth</u>, 245 Va. 268, 276, 427 S.E.2d

411, 418 (1993).

Additionally, <u>voir</u> <u>dire</u> should not provide an opportunity

for the parties to express personal opinions or to justify their

theories regarding the case.  In particular, <u>voir</u> <u>dire</u> is not an

opportunity for attorneys to testify or argue to the jury,

---

[5] Although counsel never requested a mistrial, we do not
believe he needed to make such a request in this context.  The
Commonwealth does not contend appellant needed to request a
mistrial or the issue is defaulted.  Additionally, appellant did
request the instruction, therefore, he did not need to also
request a mistrial.  <u>See</u> <u>Schmitt v. Commonwealth</u>, 262 Va. 127,
148, 547 S.E.2d 186, 200 (2001) ("Unless a defendant has made a
timely motion for a cautionary instruction <u>or</u> for a mistrial, we
will not consider his assignments of error alleging that improper
remarks were made by the prosecutor." (emphasis added)); <u>Cheng v.
Commonwealth</u>, 240 Va. 26, 38, 393 S.E.2d 599, 605–06 (1990) ("It
is well-settled that errors assigned because of a prosecutor's
alleged improper comments or conduct during argument will not be
considered on appeal unless an accused timely moves for a
cautionary instruction <u>or</u> for a mistrial." (emphasis added)).

[6] The Commonwealth does not argue that the motion for a
curative instruction was untimely.  We note that the trial court
indicated the appropriate time to consider any motion on the
comment was after the jury was impaneled, which is when the
motion for a curative instruction was made explicitly.  While we
do not condone this practice of waiting until after the jury is
impanelled, the Commonwealth did not object to this procedure at
trial or on appeal.

especially regarding facts that will not be put into evidence.
Even in counsel's opening statements, it is improper to argue
facts that counsel has no intention of proving.[7]

> A prosecutor acts unprofessionally when he
> or she alludes to evidence in his or her
> opening statement unless he or she has a
> good-faith, reasonable basis for believing
> the evidence will be offered and admitted
> into evidence.  ABA Standards for Criminal
> Justice, The Prosecution Function Standard
> 3-5.5 (1986).  A prosecutor should confine
> his or her opening statement to a
> description of evidence which will be
> offered and which he or she believes in good
> faith will be available and admissible.

Arrington v. Commonwealth, 10 Va. App. 446, 448, 392 S.E.2d 844,
845 (1990).  "'"[O]ne accused of crime is entitled to have his
guilt or innocence determined solely on the basis of the evidence
introduced at trial, and not on grounds . . . not adduced as
proof at trial."'"  Winston v. Commonwealth, 12   Va. App. 363,
367, 404 S.E.2d 239, 241 (1991) (quoting United States v.
Schuler, 813 F.2d 978, 981 (9th Cir. 1987) (quoting Taylor v.
Kentucky, 436 U.S. 478, 485 (1978))).  See also Hutchins v.
Commonwealth, 220 Va. 17, 20, 255 S.E.2d 459, 461 (1979); Dingus
v. Commonwealth, 153 Va. 846, 851, 149 S.E. 414, 415 (1929).

In Schmitt v. Commonwealth, the Supreme Court of Virginia
opined:

> We will presume that a jury has followed the
> trial court's prompt and explicit curative
> instructions, unless the record clearly
> shows that the jury disregarded the

_____

[7] While we are not ruling on the admissibility of such
evidence, nothing in the record suggests the Commonwealth had
evidence to prove that children do not timely report such
assaults.  No expert testified on children's reactions to sexual
abuse nor was such testimony expected.

> instructions. . . . It is well established
> that a judgment will not be reversed for a
> statement of counsel that the court promptly
> directs the jury to disregard unless there
> is a manifest probability that the improper
> comments were prejudicial to the defendant.

262 Va. 127, 147-48, 547 S.E.2d 186, 200 (2001) (citations omitted).

The curative instruction given by the trial court here addressed only statements made by counsel in opening statements and closing remarks, not during voir dire. That instruction was general in nature, failing to address the specific comments made by the prosecutor. The trial court did not admonish the Commonwealth nor specifically disapprove of the inappropriate assertion of evidence in the voir dire. Clearly, the trial court did not take prompt and decisive action to correct the comment. Instead, "[t]he court did not tell the jury whether the remarks objected to were improper or not, or how they were to be construed. It left it to the jurors themselves to determine whether the remarks were improper . . . ." Harrison v. Commonwealth, 183 Va. 394, 404, 32 S.E.2d 136, 141 (1944). The trial court's failure to properly direct the jury is relevant to determining prejudice because the jury may infer from such inaction that the court approved the impropriety. Bennett v. Commonwealth, 29 Va. App. 261, 274, 511 S.E.2d 439, 445 (1999).

Other factors, besides the cautionary instruction, can be examined to determine whether an appellant was prejudiced.

> Whether a manifest probability exists that
> the improper evidence prejudiced the accused
> despite the cautionary instruction depends
> upon the nature of the incompetent evidence

- 8 -

> when considered in relation to the nature of
> the charges, the other evidence in the case,
> and manner in which the prejudicial evidence
> was presented.

Mills v. Commonwealth, 24 Va. App. 415, 420-21, 482 S.E.2d 860, 862-63 (1997).

In this case, the credibility of the victims was vital to the Commonwealth's case.  Only the victims' testimony proved appellant was the perpetrator of these assaults.  A major factor affecting their credibility, one recognized by the law as an appropriate concern to place before a fact finder, see Willis v. Commonwealth, 218 Va. 560, 563, 238 S.E.2d 811, 818 (1977), was their delay in reporting the assaults to an adult.  Appellant clearly intended to, and did, use this factor to impeach the victims' testimony.  Thus, the nature of the prosecutor's inappropriate comment that victims usually delay reporting directly addressed a central, if not the central, issue in the case and increased the likelihood of prejudice.

Further, the inappropriate comment came from the assistant Commonwealth's attorney.  She presented the comment as a "commonly known" fact.  Additionally, nothing in the record indicates the prosecutor ever intended to present any evidence to substantiate this opinion.  The Supreme Court of Virginia has commented:

> We have repeatedly held that Attorneys for
> the Commonwealth are not only under the duty
> to prosecute one charged with crime; but
> also under the duty to see that the accused

- 9 -

> gets a fair and impartial trial.  Nothing
> should be done or permitted to prejudice the
> case of an accused, or obscure the minds of
> the jurors on the question of whether or not
> he is guilty of the offense charged.

McLane v. Commonwealth, 202 Va. 197, 205, 116 S.E.2d 274, 281 (1960).

The Commonwealth's revival of this issue in her rebuttal argument, contending she has dealt with numerous victims who delayed reporting, also exacerbated the problem created in voir dire.  She yet again attempted to testify to the jury regarding the typical behavior of juvenile abuse victims.  Again, the trial court gave no specific, curative instruction.

The Commonwealth contends appellant remedied any prejudice when he told the jury to disregard the Commonwealth's statements about children's delayed reporting, explaining the statements were not evidence.  This admonition by appellant did not militate against either the initial harm done by the prosecutor's comments or the trial court's failure to state his disapproval of the comments.  The jury heard this statement, which was characterized as common knowledge, and the trial court's preliminary instructions to the jury did not address this comment specifically.  The instructions did not even address information given the jury during voir dire.  Appellant's counsel tried mightily to correct the problem.  However, in light of the importance of the issue, the strength of the comment, and the

- 10 -

lack of appropriate response by the trial court, we cannot find his argument remedied the effect.[8]

We find a manifest probability of prejudice occurred.  We hold that the trial court's curative instruction was neither explicit nor sufficient.  Based on the totality of the circumstances during voir dire and in the rebuttal argument, we find the improper comments during voir dire were "so impressive as to remain in the minds of the jurors and influence their verdict."  Id.

---

[8] Because we reverse the conviction based on appellant's first argument, i.e., the prejudicial comments during voir dire, we do not address as a separate argument appellant's second contention that the trial court erred in refusing to offer a curative instruction based on the Commonwealth's statement during closing argument.

- 11 -

We reverse the convictions and remand for a new trial, if the Commonwealth be so inclined.

<u>Reversed and remanded.</u>